UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL D. SEMALA, | ) | Case No. 1:09-CV-00190 |
| | ) | |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| SHERI DUFFEY, WARDEN, | ) | (resolving ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Carol D. Semala has petitioned this Court for habeas corpus relief pursuant to 28 U.S.C. §2254.  On June 26, 2001, Petitioner Carol D. Semala pled guilty and was convicted in the Lake County Court of Common Pleas of one count of aggravated arson and one count of attempted murder.  (Docket #10, Exhibit 4).  Ms. Semala was sentenced to a nine-year term for each conviction, to be served consecutively.  (Docket #10, Exhibit 5).  Ms. Semala appealed her sentence to the Ohio Eleventh District Court of Appeals alleging that the trial court failed to give reasons for imposing a consecutive sentence.  (Docket #10, Exhibits 6, 7).  On December 4, 2002, the case was remanded to the trial court to explain its reason for imposing consecutive sentences as required by O.R.C. §2929.19(B).  (Docket #10, Exhibit 9).  On December 30, 2002,  Ms. Semala was re-sentenced to the same sentence of two consecutive nine-year terms.  (Docket #10, Exhibit 10).

Ms. Semala did not timely appeal her re-sentence and instead, filed a motion for leave to appeal based on Ohio App.R.5.  (Docket #10, Exhibit 11).  Ms. Semala's motion was granted and on October 30, 2003, Ms. Semala filed her brief alleging that the trial court misapplied the factors

set forth in O.R.C. §2929.14(E)(4) when it ordered consecutive sentences. [1]  (Docket #10, Exhibit 13).  On September 9, 2009, Ms. Semala filed a supplemental appellate brief setting forth a second assignment of error.  (Docket #10, Exhibit 14).  For her second assignment of error, Ms. Semala alleged that the imposition of a consecutive term more than the minimum, based upon facts not admitted or found by a jury, violated her "state and federal constitutional rights to trial by jury," as prohibited by *Blakely v. Washington*, 542 U.S. 296 (2004). (Docket #10, Exhibit 14 at 1).  On May 31, 2005, the appellate court affirmed Ms. Semala's re-sentence holding that, "Ohio's sentencing scheme is not unconstitutional under *Blakely* with respect to a sentence of more than the statutory minimum" and approving the trial court's consideration and application of the statutory factors to impose a consecutive sentence.  (Docket #10, Exhibit 16).

On July 11, 2005, Ms. Semala appealed the May 31, 2005 judgment to the Ohio Supreme Court again alleging that the trial court misapplied the factors set forth in O.R.C. §2929.14(E)(4) when it ordered consecutive sentences based on facts that she did not admit and which the jury did not find.  (Docket #10, Exhibit 18).  The Ohio Supreme Court accepted the appeal and held the case pending decisions in *State v. Quinones*, 2004 WL 1903250 (Ohio App. 8 Dist.) and *State v. Foster,* 2004 WL 1789514 (Ohio App. 5 Dist.).  (Docket #10, Exhibit 20).  On May 3, 2006, the case was remanded to the trial court for "resentencing consistent with *State v. Foster*[.]" (Docket #10, Exhibit 21). On May 30, 2006, the trial court again sentenced Ms. Semala "to the same aggregate term of eighteen years incarceration."  (Docket #10, Exhibit 22).

---

[1] Ms. Semala made this same argument in her first appeal, but it was labeled as an "issue presented" rather than as an assignment of error.

3

On June 30, 2006, Ms. Semala appealed the trial court's May 30, 2006 judgment.  (Docket #10, Exhibit 23).  Ms. Semala alleged that her sentence violated the Ex Post Facto clause, her due process rights, the separation of powers, the rule of lenity, and legislative intent.  (Docket #10, Exhibit 24).  On June 18, 2007, the appellate court affirmed Ms. Semala's sentence. (Docket #10, Exhibit 26).

On August 2, 2007, Ms. Semala appealed to the Ohio Supreme Court alleging the same errors as in her June 30, 2006 appeal.  (Docket #10, Exhibit 27).  On November 21, 2007, the Ohio Supreme Court denied Ms. Semala leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Docket #10, Exhibit 30).

Ms.  Semala timely filed the instant petition on February 9, 2009, under 28 U.S.C. §2254, and presents two grounds for relief: [2]

> **Ground for Relief No. 1**: A trial court violates an individual's rights under the Due Process and Ex Post Facto Clauses of the United States Constitution when it sentences the individual to more-than-the-minimum and consecutive prison terms that were not available to the court at the time the individual committed the offense. (Docket #6 at 5).

> **Ground for Relief No. 2**: A trial court violates an individual's right to due process when it sentences the individual to more-than-the-minimum and consecutive prison terms with no additional findings made by a jury and when the individual had not actual or constructive notice of the possible sentences.  (Docket #6 at 6).

Respondent answered opposing the petition (Docket #10), and Ms. Semala filed a traverse. (Docket #12).

## I.     *FACTUAL BACKGROUND*

---

[2]In her traverse, Ms. Semala states that while she "originally styled her petition as involving violations of the Ex Post Facto and Due Process Clauses, she now asserts only a due process violation."  (Docket #12 at 2).

4

The facts that formed the basis of the Ms. Semala's conviction were set forth in *State v. Semala,* 2007 WL 1731622 (Ohio App. 11 Dist.), at ¶¶2-12.

> Appellant conspired with her minor son and his eighteen-year old girlfriend Ericka Hickman and others to murder Shirley Bradley, the girlfriend of appellant's husband. Appellant made two attempts to kill Ms. Bradley at her apartment complex located at 2069 Hubbard Road, Madison Township.

> Appellant made the first attempt during the early morning hours of December 27, 2000. Under appellant's instruction, appellant, her son, and Ericka assembled 'Molotov cocktails,' consisting of empty beer bottles, pieces of appellant's shirt, gasoline, and gunpowder from shotgun shells. Appellant told her son to get his father's shotgun shells, and directed Ericka to cut open a box of the shotgun shells with a knife. Appellant then drove her son and Ericka to a gas station where appellant purchased gasoline which she placed in a gas can.

> Appellant took off her shirt in the vehicle, ripped it into pieces, and put a piece of cloth in each empty beer bottle. She then drove her son and Ericka to Madison Township and parked in a shopping center parking lot. Appellant told Ericka to leave the car and fill the bottles with gasoline which she did. Appellant then drove them to 2069 Hubbard Road, the apartment building where Ms. Bradley resided.

> Appellant told Ericka to get out of the car and light and throw the fire bombs at the apartment she thought was Ms. Bradley's residence. At first Ericka was not cooperative, and only complied after appellant threatened her. Ericka left the car and approached the apartment. She poured gas by the front door; lit Molotov cocktails; and placed them by the door. The apartment caught fire. Unknown to appellant, they had torched the wrong apartment. Kelly Lyon, a stranger to appellant, resided at this apartment. While the apartment was on fire, appellant drove her accomplices to her home in Ashtabula.

> In the early morning hours of December 29, 2000, appellant undertook a second attempt to murder Ms. Bradley, and, to that end, solicited her son and Ericka and two minor females to assist her. Appellant drove her son and Ericka to a bar where appellant worked. Appellant obtained two bottles of beer and emptied them. She then drove to a K-Mart in Conneaut where she, her son, and Ericka bought gunpowder and a gas can. Appellant drove to a gas station and filled the can with gasoline. She then returned to the bar where they met Ericka's friends Melissa and Jessica, two minor females. Appellant drove her son, Ericka, Melissa, and Jessica to Madison Township. She parked in the rear of a McDonald's restaurant parking lot, handed Ericka gunpowder and beer bottles, and told her son and Ericka to fill the bottles with gunpowder and gasoline, which they did.

5

After leaving the parking lot, appellant drove to 2069 Hubbard Road. Appellant told Ericka and Melissa to get out of the car, light the beer bottles, and throw them at the apartment she believed was the residence of Ms. Bradley. The two girls exited the car. Ericka threw a lit Molotov cocktail through the window, smashing it and setting on fire the bedroom of a two-year old baby who was asleep in his crib. The window was five feet from the crib. This apartment was occupied at the time by Christopher Simpson, his ten-year old daughter, his baby, and a friend of his ten-year old daughter. Mr. Simpson's wife[,] Kelly Simpson[,] was at work at the time. After hearing the window smash and seeing the apartment in flames, Mr. Simpson woke the children and took them to safety through the back door. Appellant had again targeted the wrong apartment.

While the apartment was on fire, appellant drove her accomplices back to Ashtabula, while discussing an alibi with them. Appellant told the others that her intended victim had been seeing her husband. She said the intended victim had attempted suicide in the past, and appellant said she would 'help her get it done this time.'

Appellant thus orchestrated two fire bomb attacks at the apartment complex where her intended victim lived. Both apartments were occupied at the time they were torched. The attacks were carried out under appellant's instructions and threats to coerce her accomplices to set fire to the apartment building. She acted as the ring leader, lookout, and getaway car driver. She planned both attacks and enlisted the assistance of minors in her efforts to murder her perceived rival.

Madison Township Police arrested appellant while she was in the process of planning a third attempt to murder Ms. Bradley. As a result of her crimes, appellant was indicted on two counts of aggravated arson in violation of R.C. 2909.02(A)(1), felonies of the first degree; two counts of aggravated arson in violation of R.C. 2909.02(A)(2), felonies of the second degree; two counts of attempted murder in violation of R.C. 2923.02 and 2903.02, felonies of the first degree; and conspiracy to commit murder in violation of R.C. 2923.01(A)(1), a felony of the first degree.

On June 26, 2001, appellant pleaded guilty to one count of aggravated arson and one count of attempted murder. The court entered a nolle prosequi on the remaining counts of the indictment.

On July 26, 2001, the trial court held a sentencing hearing. Each offense to which appellant pleaded guilty was a felony of the first degree, and carried a potential sentence of three, four, five, six, seven, eight, nine, or ten years. Appellant had a prior conviction for welfare fraud. She had a history of alcohol and drug abuse, and has used both with her children. The victim[,] Kelly Simpson[,] and her father described the serious psychological and economic harm appellant had caused their family to endure as a result of her crimes and appellant's disregard for the safety of other residents of the apartment complex. They both asked the court to impose the

6

maximum sentence on appellant. The state stressed appellant's involvement and manipulation of several minors, including her own son, to assist her in her efforts to murder her husband's girlfriend. Appellant showed no remorse for her actions and instead viewed herself as the victim. The court imposed a sentence on appellant of nine years in prison on each count, to be served consecutively.

## II.    *LAW AND ANALYSIS*

For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which  extends the  permissible range of federal review of state convictions as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

A district court has very restricted Congressionally-granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000)*; Bell v. Cone*, 535 U.S. 685 (2002). The habeas applicant must show either that the state decision was "contrary  to" or an "unreasonable application" of Supreme Court precedent.   The phrases "contrary to" and "unreasonable application" are not the same.   Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Williams,* 529 U.S. at 405-06; *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003).  Under those circumstances the

Supreme Court has held that the federal court on habeas review may grant the writ.  *Id.*  The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72; *Williams*, 529 U.S. at 412; *Bell*, 535 U.S. at 698.

Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  This includes both the state court's refusal to extend and/or its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529 U.S. at 407.   The unreasonable application of Supreme Court precedent must, however, be "objectively" unreasonable.  *Id.* at 409; *Wiggins,* 539 U.S. at 520-21.  When the state court has rendered a decision, the federal reviewing court  may not grant the writ in its "independent review of the legal question."  *Lockyer*, 538 U.S. at 75.  When there has been an "unreasonable application" of clearly established federal law, then no deference is due to the state decision and the federal court is free to resolve the claim independently.

Ms. Semala argues [3] that, "[o]n the date on which the offenses occurred in this case, *** the factual findings mandated by the Ohio Rev. Code Ann. §2929.14(B); R.C. 2929.14(C); and R.C. 2929.14(E)(4) (2003) were required to be made at a sentencing hearing and in a journal entry of conviction."  (Docket #6 at 16).  Ms. Semala maintains that, "as such, during [her]

---

[3] Because both of Ms. Semala's two grounds depend on the same law and analysis,  they will be discussed together.

8

second resentencing hearing, the trial court was required to sentence her under Senate Bill 2 provisions that were in effect at the time of her purported crimes" and that "any sentence that included non-minimum, maximum, or consecutive prison terms - that omitted the findings required by Ohio Rev. Code Ann. §2929.14(B); R.C. 2929.14(C); or R.C. 2929.14(E)(4) (2003) - violated the Ex Post Facto  and Due Process Clauses of the United States Constitution."  (*Id.* at 6-7).  In other words, Ms. Semala argues that "her sentence is unconstitutional because she committed her crimes prior to the Ohio Supreme Court's decision in *Foster*, but was sentenced pursuant to the post-*Foster* version of R.C. 2929.14."  (State Court Decision at ¶21).

The State Court Decision affirmed Ms. Semala's sentence based on the authority of *State v. Elswick*, 2006 WL 3833868 (Ohio App. 11 Dist.), which "addressed appellant's exact arguments" and found them "to be without merit."  (*Id.* at ¶21).  "In *Elswick,* we found the verbatim assignments of error that are raised on appeal to be without merit."  *Id.*

In addition to the well-reasoned constitutional analysis set forth in *Elswick,* as adopted in the State Court Decision, and which addressed the same errors Ms. Semala alleges here, every Ohio appellate district has determined "that application of the sentencing law dictated by *Foster* to acts committed prior to that decision is not an ex post facto law or due process violation under the United States or Ohio Constitutions."  *State v. Crish*, 2008 WL 4455602 (Ohio App. 3 Dist.); *State v. Rowles*, 2008 WL 5245563 (Ohio App. 9 Dist.); *State v. Bruce,* 170 Ohio App.3d 92 (Ohio App. 1 Dist.); *State v. Andrews,* 2007 WL 136627 (Ohio App. 12 Dist.); *State v. Coleman*, 2007 WL 293171 (Ohio App. 6 Dist.); *State v. Mallette*, 2007 WL 530187 (Ohio App. 8 Dist.); *State v. Palmer,* 2007 WL 969423 (Ohio App. 7 Dist.); *State v. Gibson*, 2006 WL 3775878 (Ohio App. 10 Dist.); *State v. Smith,* 2006 WL 2459101 (Ohio App. 2 Dist.); *State v. Paynter,* 2006

9

WL 3020319 (Ohio App. 5 Dist.); *State v. Grimes,* 2006 WL 3480378 (Ohio App. 4 Dist.); *State v. Elswick*, 2006 WL 3833868 (Ohio App. 11 Dist.).

Similarly, Ex Post Facto and due process challenges to *Foster* "have also been rejected by judges in this district." *Allen v. Hudson*, 2009 WL 1649312 (N.D. Ohio 2009), citing *Watkins v. Williams*, 2008 WL 2484188 (N.D. Ohio) (holding that due process is not violated by *Foster* because the new sentencing regime did not alter the fact that the defendant was aware of the maximum penalty he faced at the time he committed the crime); *Lyles v. Jeffreys*, 2008 WL 1886077 (N.D.Ohio)(finding that the re-sentencing did not violate petitioner's Due Process rights  not to be re-sentenced pursuant to a law which violates the Ex Post Facto Clause, as petitioner "had fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts."); *McGhee v. Konteh*, 2008 WL 320763 (N.D. Ohio) (affirming Magistrate Judge Limbert's conclusion that "[s]ince the Foster decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an ex post facto-type due process violation).

Ms. Semala does not assert that she was unaware of the potential sentence she faced or that the sentence is in excess of what Ohio law dictated at the time of the original sentence or re-sentence.  Ms. Semala's sole argument is that her consecutive sentence is unconstitutional because it was imposed utilizing the *Foster* remedy even though she was convicted before *Foster.*  Accordingly, Ms. Semala has not established that the State Court Decision, which relied on *Elswick,* was "contrary to" or an unreasonable application of clearly established federal law.  *See Allen*, 2009 WL 1649312 (holding that where the state appellate court rejected argument that

10

*Foster* does not violate the Ex Post Facto clause or due process rights based, in part, on the authority of *Elswick*, "petitioner has failed to show that the state appellate court decision upholding his re-sentencing resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law").

**III.    *CONCLUSION AND RECOMMENDATION***

Following review of the arguments raised in the petition and applicable law, petitioner has not demonstrated that she was in custody pursuant to state court judgment that resulted from a decision that is "contrary to" or involved in an "unreasonable application" of federal law as determined by the Supreme Court of the United States.  See 28 U.S.C. §2254(d)(1).  Further, there has been no demonstrated need for an evidentiary hearing and the petition for habeas corpus relief under 28 U.S.C. §2254 should be denied and dismissed.

_____/s/James S. Gallas_____
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: _____