UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                              :
CAROL D. SEMALA                               :
                                              :    CASE NO. 1:09-CV-190
        Petitioner,                        :
                                              :
vs.                                           :    OPINION & ORDER
                                              :    [Resolving Doc. Nos. 6, 13 & 14.]
SHERI DUFFEY, Warden                          :
                                              :
        Respondent.                        :
                                              :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On February 9, 2009, Petitioner Carol D. Semala filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 6.] With her petition, Semala seeks relief from the judgment and sentence that an Ohio state court imposed after Semala pleaded guilty to one count of aggravated arson and one count of attempted murder. [Doc. 10-2 at 11-12.] Respondent Warden Sheri Duffey opposes the petition. [Doc. 10.]

On July 22, 2009, Magistrate Judge James S. Gallas filed a Report and Recommendation that recommended the Court dismiss the Petitioner's writ. [Doc. 13.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 16.] For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Semala's request for habeas relief.

**I. Background**

On June 26, 2001, Petitioner Carol D. Semala pleaded guilty in the Court of Common Pleas,

-1-

Case No. 1:09-CV-190
Gwin, J.

Lake County, to one count of aggravated arson and one count of attempted murder. *State v. Semala, No. 2006-L-128, 2007 WL 1731622, ¶ 11 (Ohio Ct. App. June 15, 2007)*. Semala had been indicted on seven charges – including two counts of aggravated arson (felonies of the first degree), two counts of aggravated arson (felonies of the second degree); two counts of attempted murder, and conspiracy to commit murder – but the trial court "entered a nolle prosequi on the remaining counts of the indictment." *Id.*

The indictment arose out of Petitioner Semala's two separate attempts to kill Shirley Bradley, the girlfriend of Semala's husband, on December 27, 2000 and December 29, 2000. Semala "conspired with her minor son and his eighteen-year old girlfriend, Ericka Hickman, and others to murder []Bradley" *id.* ¶ 2, at Bradley's apartment complex located at 2069 Hubbard Road, Madison Township, *id.*

During the first attempt, which took place in the early morning hours of December 27, 2000, Semala, her son, and Hickman "assembled 'Molotov cocktails,' consisting of empty beer bottles, pieces of [Semala's] shirt, gasoline, and gunpowder from shotgun shells." *Id.* ¶ 3. Semala then drove her son and Hickman "to 2069 Hubbard Road, the apartment building where []Bradley resided." *Id.* ¶ 4.

Upon their arrival at the apartment building, Semala told Hickman "to get out of the car and light and throw the fire bombs at the apartment she thought was [] Bradley's residence. At first[,] [Hickman] was not cooperative, and only complied after [Semala] threatened her." *Id.* Upon leaving the car, Hickman approached the apartment, poured gas by the front door, lit the Molotov cocktails, and placed them by the door; the apartment subsequently caught on fire. *Id.* ¶ 5. Semala then left the apartment building and drove her accomplices to her home in Ashabula. *Id.*

Case No. 1:09-CV-190
Gwin, J.

Unbeknownst to Semala, Hickman had set the wrong apartment on fire – Kelly Lyon, an individual whom Semala did not know, and not Bradley, resided at that apartment. *Id.*

In the early morning hours of December 29, 2000, Semala attempted to murder Bradley for the second time with the help of her son, Hickman – her son's girlfriend – and two minor females. *Id.* ¶ 6. Semala drove her son and Hickman to a bar where Semala worked. *Id.* There, Semala obtained two empty beer bottles. *Id.* "She then drove to a K-Mart in Conneaut where she, her son, and [Hickman] bought gunpowder and a gas can. [Semala] drove to a gas station and filled the can with gasoline. She then returned to the bar where they met [Hickman's] friends Melissa and Jessica. . . ." *Id.* At this point, Semala drove her son, Hickman, and Hickman's friends "to Madison Township. She parked in the rear of a McDonald's restaurant parking lot, handed [Hickman] gunpowder and beer bottles, and told her son and [Hickman] to fill the bottles with gunpowder and gasoline, which they did." *Id.* Semala then left the parking lot and "drove to 2069 Hubbard Road. [She] told [Hickman] and [one of her friends] to get out of the car, light the beer bottles and throw them at the apartment she believed was [Bradley's residence]. The two girls exited the car. . . . . [and] Hickman threw a lit Molotov cocktail through the window. . . ." *Id.* ¶ 7.

Once again, however, Semala targeted the wrong apartment. The apartment that Semala and her accomplices set on fire was occupied by "Christopher Simpson, his ten-year old daughter, his baby, and a friend of his ten-year old daughter." *Id.* After hearing the window smash and seeing the apartment in flames, []Simpson woke the children and took them to safety through the back door." *Id.*

After setting the Simpson apartment on fire, Semala "drove her accomplices back to Ashtabula, while discussing an alibi with them. [She] told the others that her intended victim had

Case No. 1:09-CV-190
Gwin, J.

been seeing her husband. . . . [, that she] had attempted suicide in the past, and [that Semala was attempting to] 'help her get it done this time.'" *Id.* ¶ 8.

"Madison Township Police [subsequently] arrested [Semala] while she was in the process of planning a third attempt to murder []Bradley." *Id.* ¶ 10.

On July 26, 2001, the trial court held a sentencing hearing, at which it sentenced Petitioner Semala to 9 years in prison on each of the two counts for which she was convicted, to be served consecutively. *Id.* ¶ 12.  The maximum potential sentence on each count was 10 years.  In sentencing Semala, the trial court considered her "prior conviction for welfare fraud[,]. . . .[her] history of alcohol and drug abuse, and [use with] both [of] her children[,]. . . .[her] involvement and manipulation of several minors, including her own son, to assist her in her efforts to murder her husband's girlfriend. . . .," *id.*, and her lack of remorse for her actions, *id.*  Further, the court considered the statements of the Simpson family describing "the serious psychological and economic harm [that Semala] had caused [them] to endure as a result of her crimes and [Semala's] disregard for the safety of [the] other residents of the apartment complex." *Id.*

Petitioner Semala timely appealed the trial court's judgment and sentence to the state court of appeals, alleging that the trial court failed to give reasons for imposing a consecutive sentence. [Doc. 10-2, Ex. 7 at 24.] On December 4, 2002, the court of appeals remanded the case to the trial court with the instruction that the trial court explain its reason for imposing consecutive sentences, as required by O.R.C. § 2929.19(B). [Doc. 10-2, Ex. 9 at 55.] The trial court imposed the same sentence of two consecutive 9-year terms on Semala on December 30, 2002. [Doc. 10-2, Ex. 10 at 60.]

Instead of timely appealing the resentencing, Petitioner Semala filed a motion for leave to

Case No. 1:09-CV-190
Gwin, J.

appeal with the state court of appeals. The appellate court granted that motion and, on October 30, 2003, Semala filed a brief alleging that the trial court misapplied the factors set forth in O.R.C. § 2929.14(E)(4) when it ordered consecutive sentences. [Doc. 10-2, Ex. 13 at 80.] Semala subsequently filed a supplemental brief setting forth a second assignment of error: the trial court erred when it imposed more than the minimum prison term and consecutive sentences based upon a finding of factors not found by the jury or admitted by Semala in violation of Semala's state and federal constitutional right[] to trial by jury. [Doc. 10-2, Ex. 15 at 98.] On May 31, 2005, the state court of appeals affirmed Semala's re-sentence, holding that *Blakely* and *Apprendi* did not govern Semala's case because she was sentenced to less than the maximum term with respect to each of the two crimes for which she was convicted. [Doc. 10-2, Ex. 16 at 133.]

On July 11, 2005, Petitioner Semala appealed the decision of the state court of appeals to the Supreme Court of Ohio, again alleging that the trial court misapplied the factors set forth in O.R.C. §2929.14(E)(4) when it ordered consecutive sentences based on facts that Semala did not admit and which the jury did not find. [Doc. 10-2, Ex. 18 at 146.] The Supreme Court of Ohio accepted the appeal and ordered that the case be held pending the decisions in *State v. Quinones* and *State v. Foster*. [Doc. 10-2, Ex. 20 at 168.] On May 3, 2006, the Supreme Court of Ohio remanded the case to the trial court for "resentencing consistent with *State v. Foster*[.]" [Doc. 10-2, Ex. 21 at 169.] On May 30, 2006, the trial court again sentenced Semala "to the same aggregate term of eighteen years incarceration." [Doc. 10-2, Ex. 22 at 170-172.]

Petitioner Semala appealed the trial court's May 30, 2006 judgment and sentence on June 30, 2006, contending that her sentence violated the Ex Post Facto clause, her due process rights, the separation of powers, the rule of lenity, and legislative intent. [Doc. 10-2, Ex. 24 at 182-185.] On

Case No. 1:09-CV-190
Gwin, J.

June 15, 2007, the state court of appeals affirmed the sentence. [Doc. 10-2, Ex. 26 at 240.] Semala filed an appeal with the Supreme Court of Ohio on August 2, 2007, setting forth the same errors as were alleged in her June 30, 2006 appeal. [Doc. 10-2, Ex. 28 at 245-26.] On November 21, 2007, the Supreme Court of Ohio denied Semala leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." [Doc. 10-2, Ex. 30 at 266.]

On February 9, 2009, Petitioner Semala filed a petition for a writ of habeas corpus in this Court, asserting the following grounds for relief:

> GROUND ONE: A trial court violates an individual's rights under the Due Process and Ex Post Facto Clauses of the United States Constitution when it sentences the individual to more-than-the-minimum and consecutive prison terms that were not available to the court at the time the individual committed the offense.
>
> GROUND TWO: A trial court violates an individual's right to due process when it sentences the individual to more-than-the-minimum and consecutive prison terms with no additional findings made by a jury and when the individual had not actual or constructive notice of the possible sentences.

[Doc. 6 at 5-6.] After Respondent Warden Sheri Duffey filed a Return of Writ on May 15, 2009, [Doc. 10], Magistrate Judge Gallas filed a Report and Recommendation that recommended the Court deny Semala's petition, [Doc. 13.] The Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 14.] The Court considers the Petitioner's objections below.

## II. Legal Standard

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made. *See* 28 U.S.C. § 636(b)(1). As noted in Magistrate Judge Gallas's Report and Recommendation, any objections must be filed with the Clerk of Court within ten days of the report's issuance. Parties

Case No. 1:09-CV-190
Gwin, J.

waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000). To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision." *Miller,* 269 F.3d at 614 (quoting *Williams,* 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (citations omitted). The Sixth Circuit holds that, even if a federal court determines that a state court incorrectly applied federal law, the federal court still cannot grant habeas relief unless it also finds that the state court ruling was unreasonable.

### III. Analysis

-7-

Case No. 1:09-CV-190
Gwin, J.

Petitioner Semala argues that she merits habeas corpus relief because the decision of the state court of appeals was contrary to or involved an unreasonable application of federal law. Because the Court finds that the state court of appeals correctly identified the federal law on point and reasonably applied it to the facts of Semala's case, it denies Semala's petition for habeas corpus.

Petitioner Semala argues[1] that, "[o]n the date on which the offenses occurred in this case, . . . the factual findings mandated by [O.R.C.] §2929.14(B); [O.]R.C. 2929.14(C); and [O.]R.C. 2929.14(E)(4) . . . were required to be made at a sentencing hearing and in a journal entry of conviction." [Doc. 6 at 16.] Semala maintains that, "as such, during [her] second resentencing hearing, the trial court was required to sentence her under Senate Bill 2 provisions that were in effect at the time of her purported crimes" and that "any sentence that included non-minimum, maximum, or consecutive prison terms - that omitted the findings required by [O.R.C.] §2929.14(B); [O.]R.C. 2929.14(C); [and O.]R.C. 2929.14(E)(4) . . . - violated the Ex Post Facto and Due Process Clauses of the United States Constitution." [*Id.* at 6-7.] In other words, Semala contends that "her sentence is unconstitutional because she committed her crimes prior to the [Supreme Court of Ohio's] decision in *Foster*, but was sentenced pursuant to the post-*Foster* version of [O.]R.C. 2929.14.[2]" *Semala*, 2007 WL 1731622, ¶ 21.

The state court of appeals, in resolving Petitioner Semala's appeal, held that it had addressed her "exact arguments in the case of *State v. Elswick*. . . . [and had found them] to be without merit."

---

[1] Because the resolution of Semala's two grounds for federal habeas relief depends on the same law and analysis, the Court will consider and discuss these grounds together.

[2] In *Foster*, the Supreme Court of Ohio found that provisions of the Ohio felony sentencing guidelines violated the Sixth Amendment when those provisions required that a judge engage in fact-finding before imposing a sentence when: (1) the sentence exceeded the sentencing range for the offense; (2) consecutive sentences were implicated; (3) the sentence exceeded the minimum recommended sentence; or (4) the sentence was enhanced by a major drug or violent offender specification. *See State v. Foster*, 845 N.E.2d 470, 498 (Ohio 2006).

Case No. 1:09-CV-190
Gwin, J.

*Id.* For that reason, the court of appeals affirmed the judgment and sentence of the trial court. *Id.* ¶ 23.

In *Elswick*, the same court identified the correct Supreme Court precedent with respect to ex post facto laws and held that the decision of the Supreme Court of Ohio in *Foster* did not violate the Ex Post Facto or Due Process Clauses because, prior to *Foster*, "individuals who decided to commit crimes were aware of what the potential sentences could be for the offenses committed." *Elswick, No. 2006-L-075, 2006 WL 3833868, ¶ 23 (Ohio Ct. App. Dec. 29, 2006)* (citing O.R.C. § 2929.14(A)). Further, there "was no legislative alteration of Ohio's sentencing code post *Foster* [and the defendant in *Elswick*, just like Semala,] was sentenced after *Foster*. . . . was decided [in February 2006]." *Id.* ¶ 24. The court concluded that it could not hold "that *Foster* violates federal notions of due process as established in *Bouie v. Columbia*, 378 U.S. 347 (1964) . . . . [because the defendant] knew the potential statutory sentence, had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and was unlikely to amend his criminal behavior in light of a sentencing change." *Id.* ¶ 25.

The *Elswick* court also noted that "[O.]R.C. 2929.11 and [O.]R.C. 2929.12, two key statutory provisions of Ohio's sentencing scheme, survive after *Foster*. Even though trial courts are no longer required to make specific findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences on the record, [O.]R.C. 2929.11 and [O.]R.C. 2929.12 must still be considered when sentencing offenders." *Id.* ¶ 53.

Petitioner Semala does not assert that she was unaware of the potential sentence she faced or that the sentence she did receive is in excess of what Ohio law dictated at the time of the original sentence or re-sentence. Indeed, Semala's sole argument is that her consecutive sentence is

Case No. 1:09-CV-190
Gwin, J.

unconstitutional because it was imposed utilizing the analysis in *Foster* even though she was convicted before *Foster*. Because the state court of appeals correctly held that *Foster* does not violate the Ex Post Facto or Due Process Clauses generally or as applied to the facts of Semala's case, and because Semala has not established that the decision of the state court of appeals was contrary to or constituted an unreasonable application of clearly established federal law, the Court must deny Semala's petition for federal habeas relief.

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Semala's § 2254 petition. Accordingly, this action is dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. 22(b) as to both grounds for relief.

IT IS SO ORDERED.


Dated: August 17, 2009            s/          *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE